111 T.C. No. 7

UNITED STATES TAX COURT

GREENBERG BROTHERS PARTNERSHIP #4, a.k.a.
BREATHLESS ASSOCIATES, RICHARD M. GREENBERG,
TAX MATTERS PARTNER, ET AL.,[1] Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket Nos. 19575-91, 22780-91,          Filed August 24, 1998.
              29878-91,    621-92,
                623-92,  3968-92,
               4432-92, 13014-92,
              15641-92, 12062-94.

---

[1]     Cases of the following petitioners are consolidated
herewith:  Greenberg Brothers Partnership #12, a.k.a Lone Wolf
McQuade Associates, Richard M. Greenberg, Tax Matters Partner,
docket No. 22780-91; Easy Money Associates, Richard M. Greenberg,
Tax Matters Partner, docket No. 29878-91; Cinema '84, Richard M.
Greenberg, Tax Matters Partner, docket No. 621-92; First Blood
Associates, Richard M. Greenberg, Tax Matters Partner, docket No.
623-92; Under Fire Associates, Richard M. Greenberg, Tax Matters
Partner, docket No. 3968-92; Cinema '85, Richard M. Greenberg,
Tax Matters Partner, docket No. 4432-92; First Blood Associates,
Richard M. Greenberg, Tax Matters Partner, docket No. 13014-92;
First Blood Associates, Richard M. Greenberg, Tax Matters
Partner, docket No. 15641-92; First Blood Associates, Eugene C.
Lipsky, A Partner Other Than the Tax Matters Partner, docket No.
12062-94.

Pursuant to sec. 6224(c)(2), I.R.C., Ps request consistent settlement terms of partnership items with earlier settlement agreements that include concessions pertaining to  partnership and nonpartnership items.  Held: A settlement agreement that includes concessions of partnership and nonpartnership items is not subject to the consistent settlement provisions under sec. 301.6224(c)-3T, Temporary Proced. & Admin. Regs., 52 Fed. Reg. 6787 (Mar. 5, 1987).  Held, further:  Sec. 301.6224(c)-3T, Temporary Proced. & Admin. Regs., supra, is valid.


Thomas E. Redding and Sallie W. Gladney, for participants.

Joseph F. Long and Gerald A. Thorpe, for respondent.

OPINION

DAWSON, Judge:  These cases were assigned to Special Trial Judge Carleton D. Powell pursuant to the provisions of section 7443A(b)(4) and Rules 180, 181, and 183.[2]  The Court agrees with and adopts the opinion of the Special Trial Judge, which is set forth below.

OPINION OF THE SPECIAL TRIAL JUDGE

POWELL, Special Trial Judge:  These consolidated cases are before the Court on participating partners' (participants) motions pursuant to section 6224(c)(2) for entry of orders compelling respondent to extend offers of consistent settlement,

---

[2]    Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

or, alternatively, for entry of decisions reflecting terms of prior settlements.[3]

The issues are as follows: (1) Whether, under the circumstances, participants are entitled to consistent settlement terms pursuant to section 6224(c)(2); and (2) whether section 301.6224(c)-3T(b), Temporary Proced. & Admin. Regs., 52 Fed. Reg. 6787 (Mar. 5, 1987), is valid.

The relevant facts are not in dispute and may be summarized as follows. The partnerships involved in these cases were formed to purchase and exploit the rights to certain films.[4] The general partners of these partnerships were Richard M. Greenberg and/or A. Frederick Greenberg. Respondent began an examination

---

[3]    A list of the participants is attached to this opinion in an Appendix.

[4]    On the partnerships' respective returns for the years in issue, the partnerships claimed loss deductions based upon the alleged purchase of various first-run motion pictures. The films represent a roster of the famous and forgotten from 1980's cinema. The partnerships and their underlying films include, inter alia, the following: Greenberg Brothers Partnership #4, a.k.a. Breathless Associates (the 1983 remake of "Breathless" starring Richard Gere); Greenberg Partnership #12, a.k.a. Lone Wolf McQuade Associates ("Lone Wolf McQuade" starring Chuck Norris); Easy Money Associates (Rodney Dangerfield and Joe Pesci starring in "Easy Money"); Cinema '84 (James Cameron directing Arnold Schwarzenegger in "The Terminator", horror genre entries "The Howling II" and "Return of the Living Dead"); First Blood Associates ("First Blood" the initial entry in Sylvester Stallone's "Rambo" series); Under Fire Associates (Nick Nolte and Gene Hackman starring in "Under Fire"); and Cinema '85 ("Salvador" directed by Oliver Stone and starring James Woods and James Belushi and "At Close Range" starring Sean Penn and Christopher Walken).

of the partnerships at some point in the mid-1980's as part of a national project focusing on the various partnerships of the Greenberg Brothers.

The schedule below sets forth the specific dates on which respondent issued notices of final partnership administrative adjustments (FPAA's) determining adjustments to partnership items for each of the partnerships:

| Partnership | Docket No. | Partnership Taxable Years | FPAA Date | Petition Date |
|---|---|---|---|---|
| Greenberg #4/Breathless | 19575-91 | 1983-87 | June 3, 1991 | Aug. 30, 1991 |
| Greenberg #12/Lone Wolf | 22780-91 | 1983-86 | July 8, 1991 | Oct. 7, 1991 |
| Easy Money Associates | 29878-91 | 1983-86 | Oct. 7, 1991 | Dec. 20, 1991 |
| Cinema '84 | 621-92 | 1984-89 | Oct. 15, 1991 | Jan. 8, 1992 |
| First Blood Associates | 623-92 | 1983-87 | Oct. 21, 1991 | Jan. 8, 1992 |
| Under Fire Associates | 3968-92 | 1983-86 | Dec. 9, 1991 | Feb. 24, 1992 |
| Cinema '85 | 4432-92 | 1985-89 | Dec. 2, 1991 | Feb. 28, 1992 |
| First Blood Associates | 13014-92 | 1988 | Mar. 24, 1992 | June 12, 1992 |
| First Blood Associates | 15641-92 | 1989 | Apr. 20, 1992 | July 10, 1992 |
| First Blood Associates | 12062-94 | 1990 | Mar. 14, 1994 | July 11, 1994 |

It is undisputed that the petitions were timely filed and the requests for consistent settlement terms were timely made in these cases. With the exception of docket No. 12062-94, at the time the petitions were filed in these cases, each partnership's principal place of business was located at Greenwich, Connecticut. At the time the petition was filed in docket No. 12062-94, that partnership was in dissolution; the partnership's principal place of business during its winddown period was located in New York, New York.

Each of the settlement agreements with which participants seek consistent settlement was entered into and effective on

February 8, 1995 (the original settlement agreement).  Each

original settlement agreement is contained on a Closing Agreement

On Final Determination Covering Specific Matters (Form 906), and

the essential provisions (excluding the names of each

partnership, the names of the settling partners, the partnership

taxable years involved, and the actual dollar amounts contributed

to each partnership) are identical.

Among the key provisions of the various original settlement

agreements are the following:

> 1.  No adjustment to the partnership items shall be
> made for the taxable years [in issue] for purposes of this
> settlement.
>
> 2.  The taxpayers are entitled to claim their
> distributive share of the partnership losses for [the years
> in issue] only to the extent they are at risk under I.R.C.
> [sec.] 465.
>
> 3.  The taxpayers amount at risk for [the years in
> issue] is their capital contribution to the partnership.
>
>     *     *     *     *     *     *     *
>
> 6.  The taxpayers are not at risk under I.R.C. [sec.]
> 465 for any partnership notes, entered into by the
> partnership to acquire rights in the motion picture * * *
> whether or not assumed by the taxpayers.  Any losses
> disallowed under this agreement are suspended under I.R.C.
> [sec.] 465.  Such suspended losses may be used to offset the
> taxpayers pro rata share of any income earned by the
> partnership and/or other income in accordance with the
> operation of I.R.C. [sec.] 465.

Pursuant to section 6224(c)(2), participants timely

requested consistent settlement terms respecting partnership

items of the partnerships.  Participants seek to avail themselves

of paragraph one of the original settlement agreement without being bound by the burdens of the at risk provisions set forth in the remaining paragraphs. Respondent has refused to extend offers of settlement terms to participants under these circumstances.[5]

## Discussion

### TEFRA--Partnership and Nonpartnership Items

The parties agree that the partnerships are subject to the audit and litigation procedures of the Tax Equity & Fiscal Responsibility Act of 1982 (TEFRA), Pub. L. 97-248, 96 Stat. 324. The principal purpose behind TEFRA is to provide consistency and reduce duplication in the treatment of "partnership items" by requiring that they be determined in a unified proceeding at the partnership level. Maxwell v. Commissioner, 87 T.C. 783, 787 (1986); H. Conf. Rept. 97-760, at 600 (1982), 1982-2 C.B. 662; see also Slovacek v. United States, 40 Fed. Cl. 828 (1998).

Partnership items include each partner's proportionate share of the partnership's aggregate items of income, gain, loss, deduction, or credit. Sec. 6231(a)(3); sec. 301.6231(a)(3)-1(a)(1)(i), Proced. & Admin. Regs. Partnership items also include each partner's proportionate share of the partnership's liabilities, including determinations with respect to the amount

---

[5] As we understand, at least until these cases were submitted, respondent was still offering the settlement to partners who were willing to accept all of the settlement terms.

of the liabilities, and whether the liabilities are nonrecourse. Sec. 301.6231(a)(3)-1(a)(1)(v), Proced. & Admin. Regs.

A nonpartnership item is "an item which is (or is treated as) not a partnership item." Sec. 6231(a)(4). An "affected item" is "any item to the extent such item is affected by a partnership item." Sec. 6231(a)(5); see also N.C.F. Energy Partners v. Commissioner, 89 T.C. 741, 743-745 (1987); sec. 301.6231(a)(5)-1T(a), Temporary Proced. & Admin. Regs., 52 Fed. Reg. 6790 (Mar. 5, 1987).[6] The determination of a partner's amount at risk with respect to partnership liabilities personally assumed is an affected item. Hambrose Leasing v. Commissioner, 99 T.C. 298, 312 (1992); sec. 301.6231(a)(5)-1T(c), Temporary Proced. & Admin. Regs., 52 Fed. Reg. 6790 (Mar. 5, 1987). While there are partnership item components to the at risk calculation that affect that determination at the partner level, the determination of amounts at risk by individual partners is not a partnership item.[7] Hambrose Leasing v. Commissioner, supra at 309-312; sec. 301.6231(a)(3)-1(a)(1)(vi)(C), Proced. & Admin.

---

[6] There are two types of affected items: (1) Those requiring factual determinations to be made at the partner level, and (2) a computational adjustment made to record the change in a partner's tax liability resulting from the proper treatment of partnership items. N.C.F. Energy Partners v. Commissioner, 89 T.C. 741, 744 (1987).

[7] For example, paragraph six of the original settlement agreement refers to the suspension of losses under sec. 465 and carried forward to future years.

Regs. It follows, therefore, that the determinations of the amounts at risk with respect to partnership liabilities are also "nonpartnership items" within the meaning of section 6231(a)(4). Accordingly, for purposes here we refer to paragraph one of the original settlement agreement as the settlement of the partnership items provision and the remaining paragraphs referring to "at risk" as nonpartnership items settlement provisions.

TEFRA--Consistent settlement

The present dispute involves section 6224(c)(2) and section 301.6224(c)-3T, Temporary Proced. & Admin. Regs., 52 Fed. Reg. 6787 (Mar. 5, 1987).[8]

Section 6224(c)(2) provides, in part:

> Other partners have right to enter into consistent agreements.--If the Secretary enters into a settlement agreement with any partner with respect to partnership items for any partnership taxable year, the Secretary shall offer to any other partner who so requests settlement terms for the partnership taxable year which are consistent with those contained in such settlement agreement. * * *

In construing section 6224(c)(2) our task is to give effect to the intent of Congress. We begin with the statutory language, which is the most persuasive evidence of the statutory purpose.

_____

[8] No court has yet ruled upon the effect of sec. 6224(c)(2) and sec. 301.6224(c)-3T. Temporary Proced. & Admin. Regs., 52 Fed. Reg. 6787 (Mar. 5, 1987). See, e.g., Pilie v. United States, 56 F.3d 686 (5th Cir. 1995); Slovacek v. United States, 40 Fed. Cl. 828 (1998); Vulcan Oil Tech. Partners v. Commissioner, 110 T.C. 153 (1998); H Graphics/Access, Ltd. Partnership v. Commissioner, T.C. Memo. 1992-345.

United States v. American Trucking Associations, Inc., 310 U.S. 534, 542-543 (1940); Hospital Corp. of Am. v. Commissioner, 107 T.C. 116, 128 (1996). The plain meaning of statutory language ordinarily is conclusive. United States v. Ron Pair Enters., Inc., 489 U.S. 235, 241-242 (1989). If a statute is silent or ambiguous, we turn to legislative history to ascertain congressional intent. Burlington N. R.R. v. Oklahoma Tax Commn., 481 U.S. 454, 461 (1987); Peterson Marital Trust v. Commissioner, 102 T.C. 790, 799 (1994), affd. 78 F.3d 795 (2d Cir. 1996).[9]

Section 6224(c)(2) requires that the settlement agreement forming the basis for the request for consistent settlement terms must be "a settlement agreement * * * with respect to partnership items". The statute otherwise imposes no conditions upon those settlement agreements that may be subject to requests for consistent settlement terms. On the other hand, the parameters of what constitutes a settlement agreement for purposes of section 6224(c)(2) are not statutorily defined. Reference to the Spartan legislative history on settlement agreements in TEFRA proceedings is unilluminating, as the conference report evinces

---

[9] Even where the statutory language appears to be clear we are not precluded from consulting legislative history. United States v. American Trucking Associations, Inc., 310 U.S. 534, 543-544 (1940); Hospital Corp. of Am. v. Commissioner, 107 T.C. 116, 129 (1996).

no particular congressional intent as to the nature of consistent settlements.[10]

Under section 6230(k), however, the Secretary "shall prescribe such regulations as may be necessary to carry out the purposes" of subchapter C (the TEFRA provisions).  Regulations under section 6224(c)(2) were proposed on April 18, 1986.  See 51 Fed. Reg. 13231 (Apr. 18, 1986).  Pursuant to the authority of sections 6230(k) and 7805,[11] T.D. 8128, 1987-1 C.B. 325, 325-326, temporary regulations identical to the proposed regulations were promulgated shortly thereafter.  Section 301.6224(c)-3T, Temporary Proced. & Admin. Regs., 52 Fed. Reg. 6787 (Mar. 5, 1987), provides, in pertinent part:

> [Sec.] 301.6224(c)-3T.  Consistent settlements (Temporary).--(a)  In general. If the Service enters into a settlement agreement with any partner with respect to partnership items, the Service shall offer to any other partner who so requests * * * settlement terms which are consistent with those contained in the settlement agreement entered into.
>
> (b) Requirements for consistent settlements. "Consistent" settlement terms are those based on the same determinations with respect to partnership items. Settlements with respect to partnership items shall be self-contained; thus, a concession by one party with respect to a

---

[10]     The conference report simply notes in passing:  "The Secretary must offer to any partner who so requests settlement terms that are consistent with the settlement with any other partner."  H. Conf. Rept. 97-760, at 602 (1982), 1982-2 C.B. 600, 664.

[11]     Sec. 7805(a) generally provides that the Secretary "shall prescribe all needful rules and regulations for the enforcement of this title".

partnership item may not be based upon a concession by the other party with respect to a nonpartnership item. Settlements shall be comprehensive, that is, a settlement may not be limited to selected items. The requirement for consistent settlement terms applies only if--

(1) The items were partnership items for the partner entering into the original settlement immediately before the original settlement, and

(2) The items are partnership items for the partner requesting the consistent settlement at the time the partner files the request. [Emphasis supplied.]

Participants interpret "settlements" in the regulation as referring only to the consistent settlement terms of partnership items. They maintain that paragraph one of the original settlement agreement constitutes a "settlement agreement * * * with respect to partnership items" for purposes of the consistent settlement provisions and request settlement in accord with paragraph one. This interpretation of section 301.6224(c)-3T(b), Temporary Proced. & Admin. Regs., 52 Fed. Reg. 6787 (Mar. 5, 1987), is nothing more than semantical sophistry and would have us read out of the regulation the requirement that a settlement agreement for consistent settlement purposes cannot be based on concessions of nonpartnership items and that a settlement may not be limited to selected items. Where, as here, a settlement agreement contains interrelated provisions which reflect concessions of partnership and nonpartnership items, the temporary regulation provides that such original settlement

agreements are not subject to the consistent settlement provision of section 6224(c)(2).

Participants argue in the alternative that the regulation is invalid insofar as it adds restrictions that are inconsistent with section 6224(c)(2). In <u>Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.</u>, 467 U.S. 837, 843 (1984), the Supreme Court set forth the following analysis:

> If * * * the court determines Congress has not directly addressed the precise question at issue, the court does not simply impose its own construction on the statute, as would be necessary in the absence of an administrative interpretation. Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute. [Fn. refs. omitted.]

We have already concluded that the statute is silent as to the scope of consistent settlements. Under the <u>Chevron</u> analysis, the question remains whether the requirements in section 301.6224(c)-3T, Temporary Proced. & Admin. Regs., <u>supra</u>, are a permissible construction of the statute. <u>Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.</u>, <u>supra</u>.[12]

---

[12] As a general proposition, temporary regulations are accorded the same weight as final regulations. <u>Peterson Marital Trust v. Commissioner</u>, 78 F.3d 795, 798 (2d Cir. 1996), affg. 102 T.C. 790 (1994); <u>Nissho Iwai Am. Corp. v. Commissioner</u>, 89 T.C. 765, 776 (1987). In judging the validity of a temporary regulation, we employ the same analysis as that applied to a final regulation. <u>Schaefer v. Commissioner</u>, 105 T.C. 227, 229 (1995).

A legislative regulation, which is issued pursuant to a specific congressional delegation to the Secretary, is entitled to greater deference than an interpretive regulation, which is promulgated under the general rulemaking power vested in the Secretary by section 7805(a). Peterson Marital Trust v. Commissioner, 102 T.C. 790, 797 (1994), affd. 78 F.3d 795 (2d Cir. 1996). Participants concede that section 301.6224(c)-3T, Temporary Proced. & Admin. Regs., supra, is legislative in character, and we accord the regulation the highest level of judicial deference; viz, we are not to invalidate the regulation unless it is arbitrary, capricious, or manifestly contrary to the statute.[13] Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc., supra at 843-844; see also Ahmetovic v. Immigration and Naturalization Service, 62 F.3d 48, 51 (2d Cir. 1995). To be valid, section 301.6224(c)-3T(b), Temporary Proced. & Admin. Regs., supra, need not be the only, or even the best, construction of section 6224(c)(2). See Atlantic Mutual Ins. Co. v. Commissioner, 523 U.S. ___, 118 S.Ct. 1413, 1418 (Apr. 21, 1998). The Supreme Court has stated that a reviewing court

---

[13] Participants' opening brief regarding the consistent settlement issues states as follows: "Treas. Reg. [sec.] 301.6224(c)-3T(b) is a legislative regulation promulgated pursuant to Respondent's [sic] grant of authority in [sec.] 6230(k)." Even under the less deferential standard of review applicable to interpretive regulations, we would conclude that the regulation is valid. Cf. McKnight v. Commissioner, 7 F.3d 447 (5th Cir. 1993), affg. 99 T.C. 180 (1992).

need not conclude that the agency construction was the only one it permissibly could have adopted to uphold the construction, or even the reading the court would have reached if the question initially had arisen in a judicial proceeding.  [Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc., supra at 843 n.11; citations omitted.]

In promulgating regulations, the Secretary has the discretion to formulate rules not found in the statute: "supplementation of a statute is a necessary and proper part of the Secretary's role in the administration of our tax laws." Hachette USA, Inc. v. Commissioner, 105 T.C. 234, 251 (1995), affd. per curiam 87 F.3d 43 (2d Cir. 1996).  "'The power of an administrative agency to administer a congressionally created * * * program necessarily requires the formulation of policy and the making of rules to fill any gap left, implicitly or explicitly, by Congress.'"  Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc., supra at 843 (quoting Morton v. Ruiz, 415 U.S. 199, 231 (1974)).

Section 301.6224(c)-3T, Temporary Proced. & Admin. Regs., supra, is consistent with the TEFRA goal of promoting the uniform adjustment of partnership items.  H. Conf. Rept. 97-760, at 600, 602 (1982), 1982-2 C.B. 662, 664; see Maxwell v. Commissioner, 87 T.C. at 787.  It furthers this goal by ensuring the integrity of those original settlement agreements with which requests for consistent settlement terms may be made.  The regulation accomplishes this through two requirements.  First, the

settlement of partnership items must be self-contained; i.e., not premised upon the settlement of nonpartnership items, and second, an original settlement must determine all partnership items.[14] Sec. 301.6224(c)-3T(b), Temporary Proced. & Admin. Regs., 52 Fed. Reg. 6787 (Mar. 5, 1987).

The instant cases afford a prime example of the mischief that the temporary regulation aims to curtail. If, as participants argue, paragraph one of the original settlement agreements may be the subject of a consistent settlement agreement, then they are entitled to receive consistent treatment only with respect to this provision through their request under section 6224(c)(2). In essence, participants seek to extract the benefits from paragraph one and disregard the burdens from the other provisions of the original settlement agreements. Although cloaked beneath the mantle of consistent settlement, what participants actually seek are settlements that are inconsistent with those received by other partners.

---

[14] A mechanism exists by which a settlement agreement may be effected so as to comply with the requirements of the temporary regulation. The Court takes notice of the fact that respondent has utilized Form 870-L(AD) (Settlement Agreement for Partnership Adjustments and Affected Items) to settle adjustments with individual partners. The form contains two separate and distinct parts: Part one is used to settle partnership items, while part two is used to settle nonpartnership and affected items. See, e.g., Olson v. United States, 37 Fed. Cl. 727, 729 (1997).

Participants attempt to place these cases within the realm of those decisions in which courts have invalidated Treasury regulations. Although it is well settled that respondent "may not usurp the authority of Congress by adding restrictions to a statute which are not there", Estate of Boeshore v. Commissioner, 78 T.C. 523, 527 (1982), participants' reliance on this line of authority is misplaced. In each of the cases cited by the participants, a regulation was invalidated either because it directly conflicted with an unambiguous statutory provision or because it was inimical to the clear congressional mandate set forth in the pertinent legislative history.[15] As previously

---

[15] See, e.g., United States v. Vogel Fertilizer Co., 455 U.S. 16, 26 (1982) ("The legislative history of sec. 1563(a)(2) resolves any ambiguity in the statutory language and makes it plain that Treas. Reg. sec. 1.1563-1(a)(3) is not a reasonable statutory interpretation."); Koshland v. Helvering, 298 U.S. 441, 447 (1936) ("where, as in this case, the provisions of the act are unambiguous, and its directions specific, there is no power to amend it by regulation"); Jackson Family Foundation v. Commissioner, 97 T.C. 534, 542 (1991), affd. 15 F.3d 917 (9th Cir. 1994) ("there is simply no statutory basis for the regulation"); (holding that sec. 1.863-1(b), Income Tax Regs., contradicts the clear and unambiguous language of sec. 863(b)(2)); Phillips Petroleum Co. v. Commissioner, 97 T.C. 30, 34-36 (1991), affd. without published opinion 70 F.3d 1282 (10th Cir. 1995); Durbin Paper Stock Co. v. Commissioner, 80 T.C. 252, 260 (1983) ("we find section 992(a)(1)(C) to be unambiguous. In our view, there is no statutory authority for the 'paid-in' capital requirement set forth in section 1.992-1(d)(1), Income Tax Regs."); Estate of Boeshore v. Commissioner, 78 T.C. 523, 531-532 (1982) ("the regulation adds restrictions to the statute that are not there, and the regulation is out of 'harmony' with the statute's origin and purpose"); ("respondent's interpretation of section 103(c)(2)(A) is at odds with the legislative history and the totality of the circumstances surrounding the enactment

(continued...)

discussed, here there is neither an unambiguous specific statutory directive, nor any specific evidence in the legislative history as to the congressional intent behind the consistent settlement provisions.

In sum, section 301.6224(c)-3T(b), Temporary Proced. & Admin. Regs., supra, harmonizes with section 6224(c)(2) and the broader legislative purpose behind TEFRA, and we conclude that the regulation constitutes a permissible interpretation of the statute. Accordingly, we uphold the validity of the regulation as neither arbitrary, capricious, nor manifestly contrary to the statute. See Chevron U.S.A., Inc. v. Natural Resources Defense Council, 467 U.S. at 844.[16]

_____

[15](...continued)
of section 103(c)"); State of Washington v. Commissioner, 77 T.C. 656, 672 (1981), affd. 692 F.2d 128 (D.C. Cir. 1982); Arrow Fastener Co. v. Commissioner, 76 T.C. 423, 431 (1981) ("we find the statute clear and unambiguous, and respondent has no power to promulgate a regulation adding provisions that he believes Congress should have included.").

[16] Participants argue that respondent provided them with the necessary information regarding each of the original settlement agreements, fully aware that participants sought the information for the purpose of making requests for offers of consistent settlement terms. Therefore, participants suggest that respondent should be estopped from now claiming that the original settlement agreements are not subject to requests for consistent settlement terms.
Equitable estoppel is a judicial doctrine that precludes a party from denying that party's own acts or representations which induced another to act to his or her detriment. Hofstetter v. Commissioner, 98 T.C. 695, 700 (1992). Equitable estoppel is to be applied against respondent only "'with utmost caution and restraint.'" Id. at 700 (quoting Estate of Emerson v.
(continued...)

To reflect the foregoing,

An appropriate order will

be issued.

---

[16](...continued)
Commissioner, 67 T.C. 612, 617 (1977)).  The burden of proof is
on the party claiming estoppel against the Government.  Rule
142(a); Hofstetter v. Commissioner, supra at 701.
     A key element required for an estoppel is reasonable
reliance on the acts or statements of the one against whom
estoppel is claimed.  Norfolk S. Corp. v. Commissioner, 104 T.C.
13, 60 (1995), affd. 140 F.3d 240 (4th Cir. 1998); Hofstetter v.
Commissioner, supra at 700.  Although respondent provided
participants with information about the original settlement
agreements, participants were not entitled to rely upon this
information as a legal guaranty from respondent that such
settlement agreements would fit squarely within the requirements
of sec. 6224(c)(2) and the temporary regulation.  Moreover, even
if participants did so rely, their reliance was not reasonable.
Thus, participants have not shown that estoppel applies against
respondent.

APPENDIX

Partnership/Docket No.                    Participants

Greenberg Brothers Partnership #4,        John M. Kash
a.k.a. Breathless Associates--            Gerald N. and Margie L. Cooper
19575-91                                  Helen (Maude) L. Shepler
                                          Jack and Shirlee Pines
                                          James D. and Mary Kay Hudson
                                          Dale C. and Sarah L. Hudson
                                          Margaret A. Hudson
                                          Dennis C. and Kellie S. Hudson
                                          John A. and Maria A. Barnett

Greenberg Brothers Partnership #12,       Wilderness Village Properties
a.k.a. Lone Wolf McQuade Associates--     Lyman F. Bush
22780-91                                  Robert G. Wekell
                                          Murray D. and Bonnie B. Nelson
                                          Warren A. Secord
                                          Richard K. Baker
                                          Edwin A., Jr. and Karin M. Locke
                                          Dick E. and Janet R. Jones
                                          Shirley M. and Lois B. Wekell
                                          Herman M. and Gloria R. Nirschl
                                          Stephen O. and Lynn M. Roberts
                                          William H. Bratton
                                          James A. and Patricia A. Grever
                                          Robert A. Mandich
                                          William M. and Rose Marie Wagner
                                          Douglas C. and Robin T. Larson
                                          William Edward Duncan

Easy Money Associates--29878-91           Albert Louis Wade, Jr.
                                          David D. & Joyce N. Fagerland
                                          Henry W. and Patricia D. Bates
                                          Charles W. and Naomi J. Yett
                                          George R. Blitch
                                          Lynn F. Cassidy
                                          Ronald Braunschweig

Cinema '84--621-92                        Friar Tuck Partners
                                          Lyman F. Bush
                                          C. William and Charlotte I. Clay
                                          Edwin A., Jr. and Karin M. Locke
                                          Dick E. and Janet R. Jones
                                          Mohan S. and Kalyani Phanse
                                          Jack and Shirley Pines
                                          John M. and Mary D. Kash
                                          Henry J. and Shirlene Romain
                                          Tommy S. Shelton
                                          Raymond and Develya Cox
                                          Jeffrey Dubnow
                                          Stephanie Lite
                                          Francis Dan and Mary Day Whitehurst
                                          James S. Greenwood

|                                                              |                                       |
|--------------------------------------------------------------|---------------------------------------|
|                                                              | Kenneth G. and Patricia Gamble        |
|                                                              | Jerry R. and Marlynne Olson           |
|                                                              | Roger A. and Rebecca M. Myklebust     |
|                                                              | Richard J. and Patricia Panicco       |
|                                                              | Karl E. Epstein                       |
|                                                              | Charles and Jane Osborn               |
| First Blood Associates--623-92, 13014-92, 15641-92, and 12062-94 | Joe A. Clements                   |
|                                                              | Joseph E. and Bernice L. Goodwin      |
|                                                              | Don R. and Patsy A. Slaughter         |
|                                                              | Charles W. and Collette L. Russell    |
|                                                              | Vincent L. and Marilyn L. Mogas       |
|                                                              | Hurdle H., Jr. and Frances J. Lea     |
|                                                              | William L. Green                      |
|                                                              | Thomas L. and Lynda L. Arnold         |
|                                                              | Lance H. and Franzel S. Bondy*        |
|                                                              | David D. and Betty A. Maytag          |
|                                                              | Glenna Goodacre                       |
|                                                              | Louis F., Jr. and Cynthia B. Wood     |
|                                                              | William H. Bratton                    |
|                                                              | Charles S. and Julie Filleman         |
|                                                              | Richard K. Baker                      |
|                                                              | Ronald and Elaine Altman              |
|                                                              | Barry J. MacNeal                      |
|                                                              | Michael J. and Jo Ann Scarfia         |
|                                                              | Stephen O. and Lynn M. Roberts        |
|                                                              | Thomas M. Nixon                       |
| Under Fire Associates--3968-92                               | Louis D. Cross                        |
|                                                              | C. William and Charlotte I. Clay      |
|                                                              | Charles W. and Collette L. Russell    |
|                                                              | Howard W. and Carole L. Neuner        |
| Cinema '85--4432-92                                          | Jack P. McCarthy                      |
|                                                              | Roger A. and Rebecca M. Myklebust     |
|                                                              | Thomas L. and Miriam Holt             |
|                                                              | Paul E. and Kathleen A. Weaver        |
|                                                              | Wallace and Maria Steinberg           |
|                                                              | William A. Newman                     |
|                                                              | Karl E. Epstein                       |
|                                                              | Lawrence C. Board                     |

*  Only as to the Motion for Entry of Order to Compel Respondent to Extend Offers of Consistent Settlement filed in each of the First Blood Associates cases.